594 A.2d 646

COMMONWEALTH of Pennsylvania, DEPARTMENT OF ENVIRONMENTAL RESOURCES, Appellee,

v.

Lawrence MARRA and Deborah Fallos.

Appeal of Lawrence MARRA.

Supreme Court of Pennsylvania.

Submitted May 6, 1991.

Decided July 18, 1991.

Heywood Eric Becker, Point Pleasant, for appellant.

Janice Quimby–Fox, Wm. Stanley Sneath, Asst. Counsels–DER, Philadelphia, for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA, PAPADAKOS and CAPPY, JJ.

## OPINION OF THE COURT

FLAHERTY, Justice.

This is an appeal from an order of Commonwealth Court granting the request of the Department of Environmental Resources (DER) for an injunction which, inter alia, requires Lawrence Marra and Deborah Fallos [1] to disclose the location of certain paint solvents and waste which was allegedly removed from their property between October 12 and December 18, 1989. Marra claims that the order violates his Fifth Amendment right to avoid self-incrimination and asks this court to strike that portion of the order which requires him to reveal the location of the waste materials.[2]

---

**1.** Deborah Fallos was originally a party to this action, but her appeal was discontinued.

**2.** The Fifth Amendment to the United States Constitution provides that "No person ... shall be compelled in any criminal case to be a witness against himself...."

In addition to his Fifth Amendment claim, Marra also asserts that Commonwealth Court's order violates his right to avoid self-incrimination under Article 1, Section 9 of the Pennsylvania Constitution, which states, in pertinent part, that a person accused in a criminal prosecution "cannot be compelled to give evidence against himself." This court has stated that the privilege against compulsory self-incrimination contained in the Pennsylvania Constitution is coextensive with that of the federal constitution and is governed by federal standards. *Commonwealth v. Carrera*, 424 Pa. 551, 227 A.2d 627

The injunction in question was issued on December 18, 1989 after a hearing that same day, at which DER presented uncontroverted evidence that Marra and Fallos and their agents dumped 4,000 to 6,000 cans of paint and solvent waste on their property in Upper Saucon Township. DER also presented evidence that Marra and Fallos, in defiance of a DER order issued October 24, 1989 prohibiting the removal of the waste from the property without prior DER approval, removed the waste and deposited it at an unknown location. Further, DER established that the improper disposal of this waste could implicate the public health and safety.

Although Marra was present at the December 18, 1989 hearing, he did not offer any evidence, but he made a closing statement objecting to the proceedings on various grounds, none of which concerned the Fifth Amendment.

Paragraph 2 of the December 18, 1989 order, the portion of the order at issue in this case, provides:

> Within seven (7) days of the date of this Order, defendants, Marra and Fallos, shall account for the whereabouts of all paint and solvent waste removed from their Vera Cruz Road property during the period of October 12, 1989 to the present. The required accounting shall include disclosure to the Department of all locations and/or facilities, whether permitted or unpermitted, where such paint and solvent waste has been stored or dumped. Defendants shall provide the Department with documentation of disposal at any licensed or unlicensed facilities to which the material in question was delivered for disposal.

Marra appealed as of right to this court from the order of Commonwealth Court. Commonwealth Court's opinion in support of its order stated, inter alia, that the injunction was authorized by the Solid Waste Management Act and

(1967). Accordingly, for the sake of brevity, the claims asserted in this appeal shall be referred to as a Fifth Amendment claim.

Clean Streams Law to protect the public health and safety; that Marra did not raise a Fifth Amendment objection below, and therefore, cannot raise it in this court; and that the Fifth Amendment challenge to the order is premature and may only be raised in a contempt action brought by DER to compel compliance with the order.

The essence of the claim raised by Marra is that Commonwealth Court's order compels him to divulge information which is self-incriminating, in violation of the Fifth Amendment.

The Commonwealth counters that the proceeding in which the injunction was issued was civil, not criminal, and that since Marra did not testify, there was no opportunity for the court to determine whether the Fifth Amendment claim might be justified. *See Hoffman v. United States,* 341 U.S. 479, 486, 71 S.Ct. 814, 818, 95 L.Ed. 1118 (1951) ("It is for the court to say whether his silence is justified ... and to require him to answer if 'it clearly appears to the court that he is mistaken.'")

Commonwealth Court, citing the United States Supreme Court, has stated that the Fifth Amendment:

"not only protects the individual against being involuntarily called as a witness against himself in a criminal prosecution but also privileges him not to answer official questions put to him in any other proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings." *Lefkowitz v. Turley,* 414 U.S. 70, 77, 94 S.Ct. 316, 322, 38 L.Ed.2d 274 (1973).

*Caloric Corp. v. Unemployment Comp. Board of Review,* 70 Pa.Cmwlth. Ct. 182, 187, 452 A.2d 907, 909 (1982). Since Marra asserts, without contradiction from the Commonwealth, that the Office of Attorney General, Environmental Crimes Section, "has an on-going investigation of this matter," it appears that this case, in essence, involves a compulsion initiated by government to divulge information in a

civil proceeding which might incriminate the defendant in a future criminal proceeding, the very thing which is proscribed by the Fifth Amendment.[3]

This notwithstanding, the Commonwealth and the lower court assert that Marra may not assert a Fifth Amendment privilege until DER seeks to hold him in contempt for his failure to comply with the terms of the order. Until that time, according to the Commonwealth, appellant's Fifth Amendment rights are not implicated.

The jurisprudential policies behind the Commonwealth's assertion that the case is not ripe for decision, ultimately, are that lower courts must be given an opportunity to correct errors before alleged errors are addressed by appellate courts and that courts may only address cases which have reached a procedural posture in which the dispute between the parties is clearly extant and certainly defined. In the present case, the Commonwealth asserts that the lower court has not had an opportunity to address the Fifth

**3.** The United States Supreme Court has recently commented on the historical basis of the Fifth Amendment privilege against compulsory self-incrimination:

"Historically, the privilege was intended to prevent the use of legal compulsion to extract from the accused a sworn communication of facts which would incriminate him. Such was the process of the ecclesiastical courts and the Star Chamber—the inquisitorial method of putting the accused upon his oath and compelling him to answer questions designed to uncover uncharged offenses, without evidence from another source. The major thrust of the policies undergirding the privilege is to prevent such compulsion." [*Doe v. United States*], [487 US 201] at 212, 101 L.Ed.2d 184, 108 S.Ct. 2341 [2348] (citations omitted).... At its core, the privilege reflects our fierce "unwillingness to subject those suspected of crime to the cruel trilemma of self-accusation, perjury or contempt" ... that defined the operation of the Star Chamber, wherein suspects were forced to choose between revealing incriminating private thoughts and forsaking their oath by committing perjury. See *United States v. Nobles,* 422 U.S. 225, 233, 45 L.Ed.2d 141, 95 S.Ct. 2160 [2167] (1975) ("The Fifth Amendment privilege against compulsory self-incrimination ... protects 'a private inner sanctum of individual feeling and thought and proscribes state intrusion to extract self-condemnation'") (quoting *Couch v. United States,* 409 U.S. 322, 327, 34 L.Ed.2d 548, 93 S.Ct. 611 [615] (1973).
*Pennsylvania v. Muniz,* —— U.S. ——, ——, 110 S.Ct. 2638, 2647, 110 L.Ed.2d 528, 548 (1990).

Amendment claim and that, in any event, this appeal is premature because the Commonwealth has not sought to enforce its order.

Although we cannot conceive of circumstances in which appellant's Fifth Amendment rights would not be implicated by the order in question, we nonetheless must agree with the Commonwealth that the case is not ripe for decision. In *Albertson v. Subversive Activities Control Board,* 382 U.S. 70, 74, 86 S.Ct. 194, 196, 15 L.Ed.2d 165, 169 (1965), the United States Supreme Court was called upon to determine whether a Fifth Amendment claim was ripe where, in a prosecution under the Subversive Activities Control Act, the Attorney General sought to compel petitioners to register as members of the Communist Party. Petitioners asserted their Fifth Amendment claim in answers to petitions filed by the Attorney General before the Subversive Activities Control Board and in the review proceedings in the Court of Appeals, and in each instance the Attorney General rejected their claims. In failing to register, petitioners risked penalties of a fine up to $10,000 per day for each day of failure to register and/or imprisonment of up to five years. The Court determined that petitioners' Fifth Amendment claim *was* ripe because it had been asserted and rejected at every stage below and because requiring petitioners to wait until enforcement proceedings were commenced would be to require them to risk enormous fines and imprisonment.

In the present case, the Commonwealth has not sought to enforce its injunction, the lower court has not yet had an opportunity to hear appellant's Fifth Amendment claim, and appellant herein does not risk the imposition of greater sanctions by awaiting the enforcement proceeding. It is possible that such proceedings will never be initiated. Accordingly, the case is not yet ripe for decision. *Accord, United States v. Johnson,* 76 F.Supp. 538, 541, (M.D.Pa. 1947) (To assert the privilege against self-incrimination, the witness must refuse to answer questions or produce doc-

uments and must test the matter in a contempt proceeding or by habeas corpus.)

Appeal dismissed.

McDERMOTT, J., concurs in the result.